UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY JOHNSON,<br><br>        Plaintiff,<br><br>    v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, ET AL.,<br><br>        Defendants.<br>_____/ | No. C-09-04727 JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND MOTION TO STRIKE [Docket No. 45]** |

## I.   INTRODUCTION

This action arises out of a Material Management Department Vendor Contract ("Contract") between Plaintiff Gary Johnson, doing business as Johnson Enterprises, and Regents of the University of California ("Defendant UC"), under which Johnson Enterprises provided facilities management and maintenance to Defendant UC.  Plaintiff asserts claims for: 1) discrimination in violation of 42 U.S.C. § 1983 (Claim One); 2) breach of contract (Claim Two); 3) breach of the implied covenant of good faith and fair dealing (Claim Three); and 4) specific performance (Claim Four).

Presently before the Court is Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted and Motion to Strike [Docket No. 45] ("the Motion").  In the Motion, Defendants seek dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure of Claims One and Four.  Defendants further requests that the Court strike under Rule 12(f) of the Federal Rules of Civil Procedure Plaintiff's request for statutory and treble damages on Claims One through Three.  Finally, Defendants ask the Court to either dismiss or strike Claim Three on the

ground that it is superfluous. A hearing on the Motion was held on June 25, 2010 at 9:30 a.m. For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

## II. BACKGROUND

### A. Factual Background[2]

Plaintiff alleges that he is an individual residing in the County of Solano, California and that "[a]t all times pertinent to this action, Plaintiff is the owner of and doing business as Johnson enterprises, a minority vendor of defendant UC." First Amended Complaint ("FAC") ¶ 6. According to the First Amended Complaint, on or about February 21, 2001, Plaintiff and Defendant UC entered into a Contract for Plaintiff to provide facilities management and maintenance for Defendant UC. *Id.* ¶ 12. Plaintiff alleges that under the terms of the Contract, Plaintiff was entitled to receive an annual adjustment to the Contract pricing, which applied to all renewals or extensions of the Contract.[3] *Id.* ¶ 13. According to Plaintiff, since 2001, the Contract has been extended twelve times; Defendant UC adjusted the Contract price three times between 2001 and 2004, but failed to adjust the Contract price in 2006, 2007, and 2008, allegedly resulting in $94,277.00 in lost profits to Johnson Enterprises. *Id.* ¶¶ 13-14.

In or about February 2006, Plaintiff and Defendant UC's Purchasing Agent, Gail Siegal, discussed Plaintiff's first request for a price increase under the Contract. *Id.* ¶ 15. At that time, Siegal denied Plaintiff the adjusted pricing, stating it would be "ungrateful to ask for an increase." *Id.* On or about September 27, 2007, Plaintiff and Defendant UC's new Purchasing Agent, Renaldo, had a discussion about the increases, in which Plaintiff again requested the adjusted price. *Id.* ¶ 16. Renaldo explained that in order to receive the increase in Contract price, Plaintiff would have to

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

[2] For purposes of this Motion, the Court accepts as true all factual allegations in the Complaint. *See Cahill v. Liberty Mutual Insurance Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

[3] Although the First Amended Complaint states that the Contract is attached as Exhibit A, *see* FAC ¶ 12, it is not attached. Therefore, the Court cannot evaluate Plaintiff's characterization of the Contract provisions.

2

cease work for 4-5 months while the Contract matriculated through the bidding process. *Id.* Plaintiff told Renaldo that the cessation of work for 4-5 months would eliminate any increase to the contract price because his work would stop during the bid process; however, Renaldo assured Plaintiff that the bidding process was necessary. *Id.* Plaintiff alleges that the bidding process could not have taken 4-5 months and that he could have been granted the price increase without any work stoppage, citing to the fact that another, non-minority contractor, Gardener's Guild, received the increases under the same blanket Contract without having to suffer a work stoppage while the Contract was out for bid. *Id.* at ¶ 17-18. Plaintiff further alleges that Defendant Austin – the Associate Director of UCSF Capital Programs Facilities Management Department at the Parnassus Campus – was given the full bid package for Plaintiff and failed to move forward with the bid process. *Id.* at ¶¶ 8, 18.

Plaintiff alleges that in October and November of 2007, Defendant UC requested that Plaintiff provide bids for additional services to be performed on its campus. *Id*. ¶¶ 19- 20. On or about October 2007, Gerard St. Martin, hired by Defendant Austin and Defendant DeGroot – Building Manager of Capital at the Parnassus Campus – met with Plaintiff and informed him and his agent that Plaintiff had the lowest bid for the painting project for UC's Express Store. *Id.* ¶ 19. Plaintiff alleges that after being offered the job by Defendant UC, however, Defendant UC and its agents gave the job to a non-minority contractor. *Id.*

Plaintiff alleges that on or about November 2007, Defendant UC's agent, Simon Schuster, approached Plaintiff about additional painting work to be performed, and stated that Plaintiff "would be selected to perform the painting work." *Id.* ¶ 20. Plaintiff visited the work site, where he learned that Schuster and St. Martin had the painting work completed by a non-minority contractor. *Id.* In both October and November 2007, Plaintiff agreed to perform these services for a bid amount below his competitors. *Id.* However, both times after Defendants offered Plaintiff the work, they had non-minority contractors perform the work instead. *Id.* Plaintiff alleges, on information and belief, that the bidding processes used by all Defendants were discriminatory in nature and have caused him damages in the amount of $5,600.00 due to the loss of these painting contracts. *Id.*

3

According to Plaintiff, between August 2008 and January 2009, Plaintiff was directed by the Senior Grounds Superintendent of Capital Programs, Dexter Lee, to perform 1,100 hours of Skilled Labor for painting projects conducted on the Parnassus Campus and Laurel Heights facility at the adjusted rate of $20.00 an hour. *Id.* at ¶ 21. Plaintiff alleges that this work was outside of the Contract, entitling Plaintiff to a payment of $22,000.00. *Id.*

On or about February 2, 2009, Plaintiff met with Defendant Austin to discuss Defendant UC's failure to adjust the Contract's price according to the terms in the agreement. *Id.* at ¶ 22. Defendant Austin instructed Plaintiff to provide supporting documentation for any claim for unpaid services. *Id.* Plaintiff provided a demand for payment with the supporting documentation; however, Defendant UC refused to pay the alleged outstanding sums. *Id.* at ¶ 23.

Plaintiff alleges that he provided services to Defendant UC under the Contract in the amount of $121,877.00, for which he has not yet been compensated. *Id.* at ¶ 24. Plaintiff alleges that Defendants Austin and DeGroot acted willfully, fraudulently, maliciously, oppressively, and with intent to injure Plaintiff. *Id.* at ¶ 25.

### B. The First Amended Complaint

In the First Amended Complaint, Plaintiff asserts claims for discrimination in violation of 42 U.S.C. § 1983 (Claim One), breach of contract (Claim Two), breach of the implied covenant of good faith and fair dealing (Claim Three), and specific performance (Claim Four). The § 1983 claim, which is asserted against Defendants Austin and DeGroot, is based on allegations that Austin's and DeGroot's actions in failing to allow Plaintiff to request increases to the agreement and threatening work stoppage if the contract went out to bid were discriminatory business practices. FAC ¶ 27. Additionally, Plaintiff alleges that the hiring of non-minority contractors to complete painting projects after soliciting and approving bids from Plaintiff was discriminatory, as well as Austin's and DeGroot's practice of having Plaintiff perform skilled painting work and refusing to compensate him at the skilled painting work scale. *Id.* at ¶¶ 27-28.

The breach of contract claim, which is asserted against Defendant UC, is based on allegations that UC did not provide the annual adjustments, as provided by the Contract, that applied

to any and all renewals or extensions to the Contract. *Id.* at ¶ 35. The Claim is also based on the allegation that UC failed to compensate Plaintiff for performance of skilled labor painting on UC's premises. *Id.*

The breach of the implied covenant of good faith and fair dealing claim, which is asserted against Defendant UC, is based on allegations that UC deprived Plaintiff of the benefits of the Contract by not providing payments for adjustments to renewals or for payment of services rendered. *Id.* at ¶ 42. The Plaintiff, in his specific performance claim, asserted against Defendant UC, alleges that UC breached the Contract for the reasons stated above, that Plaintiff performed under the terms of the contract, and that as a result, Plaintiff has been damaged in the amount of $121,877.00. *Id.* at 46-48. Plaintiff further alleges that damages are certain and that there is an inadequate remedy at law. *Id.* at ¶¶ 49.

For Claim One, Plaintiff requests general damages, statutory damages, punitive damages in the amount of $2,100,000.00, attorneys' fees, costs of suit, treble damages, and other relief the court deems proper. *Id.* at 9-10. For Claim Two, Plaintiff requests general damages in amount of $121,877.00, statutory damages, attorneys' fees, costs of suit, treble damages, and other relief the court deems proper. *Id.* at 10. For Claim Three, Plaintiff requests general damages, statutory damages, attorneys' fees, and costs of suit. *Id.* For Claim Four, Plaintiff requests general damages, statutory damages, and other relief the court deems proper. *Id.*

**C.   The Motion**

In the Motion, Defendants asserted that certain claims (or portions thereof) failed, as a matter of law under Rule 12(b)(6) and further, that Plaintiff's requests for certain types of remedies should be stricken under Rule 12(f).

First, Defendants asserted that Plaintiff's § 1983 claim was barred by the two-year statute of limitations as to events occurring before October 5, 2007. Motion at 5-6. Additionally, Defendants argued that there was no basis for "statutory" or "treble" damages on this claim, and therefore the requests for such damages on Claim One should be stricken. *Id.* at 6.

5

Second, Defendants asserted that "statutory" and "treble" damages were not available for breach of contract claims, and therefore Plaintiff's request for these damages should be stricken on Claims Two and Three. *Id.*

Third, Defendants argued that Plaintiff's breach of the implied covenant of good faith and fair dealing claim was duplicative of his breach of contract claim, and therefore should be dismissed or stricken. *Id.*

Fourth, Defendants argued that Plaintiff's specific performance claim should be dismissed because specific performance is not an independent claim, but merely an equitable remedy. *Id.* Defendants argued further that Plaintiff's request for specific performance (whether as an independent claim *or* as a remedy) should be dismissed or stricken because specific performance is not available in this case, both because there is an adequate legal remedy and because the Contract is for personal services. *Id.*

In his Opposition, Plaintiff sought leave to amend to recast Claim One as a 42 U.S.C. § 1981 claim rather than a § 1983 claim. Plaintiff argued that under § 1981, a four-year statute of limitations rather than a two-year statute of limitations applies. Opposition at 3. Plaintiff did not oppose Defendants' Motion to the extent that it requested the Court strike the prayer for treble damages on Claim One, conceding that "there is no provision for 'treble damages'" under § 1981. *Id.* However, Plaintiff did oppose the Motion as to its request that the Court strike Plaintiff's prayer for statutory damages on Claim One, arguing that there was statutory language providing for compensatory damages, attorneys' fees, and injunctive relief in connection with a § 1981 claim. *Id.*

As to Claims Two and Three, Plaintiff opposed Defendants' Motion to the extent it asked the Court to strike Plaintiff's request for statutory damages, citing to California Civil Code § 3301 for the proposition that damages need only be ascertainable in their nature and origin. *Id.* at 4. In addition, as to Claim Three, Plaintiff rejected Defendants' assertion that that claim was superfluous, arguing that the conduct underlying this claim is distinctly different from the conduct underlying his breach of contract claim. *Id.* Therefore, Plaintiff argued, Claim Three should not be dismissed or stricken.

6

As to Claim Four, Plaintiff requested "leave to amend damages claim for specific performance." *Id.* at 5. It is not entirely clear what aspect of Claim Four Plaintiff was seeking to amend in the Opposition. Plaintiff also challenged Defendants' assertion that specific performance was unavailable because the contract was for personal services, citing to the exception to that rule allowing specific performance when the personal service is unique enough that the value of it cannot be compensated in damages in an action at law. *Id.*

In their Reply, Defendants argued as to Claim One that Plaintiff did not assert a § 1981 claim in the original or First Amended Complaint and should not be allowed to amend the First Amended Complaint do so now. Reply at 1. In particular, Defendants argued that Plaintiff's request was untimely and further, that Plaintiff's § 1981 claim would fail, as a matter of law, because Plaintiff asserts his civil rights claim as an individual whereas the Contract on which the § 1981 claim would be based was between UC and Gary Johnson Enterprises, Inc. Thus, Defendants assert, Gary Johnson, as an individual, has no personal rights on which to base a § 1981 claim. In support of this position, Defendants filed a Request for Judicial Notice in Support of Defendants' 12(b)(6) Reply Brief ("Request for Judicial Notice"), asking the Court to take judicial notice of a document entitled "Business Entity Detail," from the official website of the California Secretary of State's Business Portal, indicating that Gary Johnson Enterprises, Inc. was a suspended corporation that was incorporated on October 28, 2005. [4] Request for Judicial Notice, Ex. 1. Further, according to Defendants, by asking to replace the § 1983 claim with a § 1981 claim, Plaintiff implicitly conceded that his § 1983 claim lacks merit.

---

[4] Under Federal Rule of Evidence 201(b), "[a] court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment," as long as the facts are not subject to reasonable dispute. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *see also* Fed. R. Evid. 201(b). Here, the document is publically available on the California Secretary of State's Business Portal website and is not subject to reasonable dispute. In addition, Plaintiff did not oppose the Request for Judicial Notice. Therefore, the Request for Judicial Notice is GRANTED.

7

1    As to Claim Three, Defendants reiterated that the claim for breach of the covenant of good

2 faith and fair dealing was based on the exact same factual allegations as his breach of contract claim

3 and should, therefore, be dismissed as superfluous. *Id.*

4    As to Claim Four, Defendants argued that Plaintiff conceded in their Opposition that specific

5 performance is not itself a claim and that Plaintiff's request for leave to amend his damage claim to

6 include specific performance should be denied because specific performance is not an available

7 remedy for a contract to perform personal services. *Id.*

8    At the Motion hearing, Plaintiff stipulated that he no longer seeks to assert a § 1983 claim,

9 but rather, that he wishes to drop that claim entirely and replace it with a claim under § 42 U.S.C. §

10 1981.[5]  Plaintiff further stipulated that he no longer seeks specific performance, either as a separate

11 claim or as a remedy.  Finally, Plaintiff agreed to drop his request for statutory, treble, and/or

12 punitive damages as to all of his claims.  Therefore, the only remaining issues are: 1) whether

13 Plaintiff should be permitted to amend Claim One to assert a § 1981 claim; and 2) whether the Court

14 should strike Claim Three, for breach of the implied covenant of good faith and fair dealing, on the

15 grounds that it is superfluous.

16 **III.  ANALYSIS**

17    **A.  Legal Standard**

18       **1.  Rule 12(b)(6)**

19    A complaint may be dismissed for failure to state a claim for which relief can be granted

20 under Federal Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P 12(b)(6).  In order to survive a

21 motion to dismiss under Rule 12(b)(6), a complaint must "contain either direct or inferential

22 allegations respecting all the material elements necessary to sustain recovery under *some* viable

23 legal theory." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 562 (2007) (quoting *Car Carriers, Incl v.*

24 *Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) (internal quotations omitted; emphasis in

25 original)).  For purposes of resolving a Rule 12(b)(6) motion, courts accept all allegations of

---

[5] At oral argument, Defendants stipulated that if Plaintiff were permitted to amend his complaint to assert a § 1981 claim, a four-year statute of limitations would apply to that claim.

material fact as true and construe the complaint in the light most favorable to the nonmoving party. *Nat'l Wildlife Fed'n v. Espy*, 4 F.3d 1337, 1380 (9th Cir. 1995).  In *Bell Atlantic*, the Supreme Court stated that "heightened fact pleading of specifics" is not required, and that all that is required is "enough facts to state a claim to relief that is plausible on its face."  550 U.S. at 570.

### 2. Rule 12(f)

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Immaterial matter "is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Cal. Dep't of Toxic Substances Control v. Alco Pacific, Inc.*, 217 F. Supp. 2d 1028, 1032 (C.D. Cal. 2002) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)).  Impertinent material "consists of statements that do not pertain, or are not necessary to the issues in question." *Id.* "[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).  The court has discretion to determine whether to strike allegations. *Id.*

### B. Claim One

Plaintiff requests leave to amend his complaint to assert a claim pursuant to 42 U.S.C. § 1981.  For the reasons stated below, the Court GRANTS Plaintiff's request.

Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  "Five factors are frequently used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of the amendment, and (5) whether plaintiff has previously amended his complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).  Courts are generous in granting leave to amend where there is no bad faith or undue delay and granting leave to amend will not result in prejudice to the defendant. *See, e.g., Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).  However, "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend." *Id.*  The Ninth Circuit has held that the "rule favoring liberality in amendments to

9

pleadings is particularly important for the pro se litigant . . . [who] is far more prone to making errors." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citations omitted).

Here, there is no indication that Plaintiff's request to amend is made in bad faith. Nor do Defendants point to any evidence that they would be prejudiced by the proposed amendment. Further, the Court rejects Defendants' assertion that Plaintiff's request for leave to amend should be denied on the basis of undue delay. While Plaintiff could have asserted his § 1981 claim sooner, the Court does not find this delay sufficient to warrant denial of Plaintiff's request for leave to amend, given the Plaintiff was unrepresented by counsel for several months after the original complaint was filed and was proceeding pro se until very recently. For the same reason, the Court concludes that Plaintiff's request for leave to amend should not be denied on the basis that he already amended his complaint. The only remaining question, then, is whether Plaintiff can state a claim under § 1981 or rather, whether the amendment is futile.

Defendants argue that Plaintiff's § 1981 claim would fail under Rule 12(b)(6), and therefore the Court should not grant Plaintiff's request for leave to amend. In particular, Defendants contend that Plaintiff cannot, as an individual, assert a § 1981 claim on behalf of his business because he was not acting in his individual capacity when he entered into the Contract with Defendant UC. Rather, Defendants assert that Plaintiff's corporation, Johnson Enterprises, Inc., was the contracting party, and that Plaintiff as a result does not have individual rights arising from the Contract, thus barring his § 1981 claim.

The Court finds that it is premature to make a determination as to whether Plaintiff, as an individual, will be able to pursue a § 1981 claim against Defendant UC on the basis of the Contract. There is no copy of the Contract attached to the complaint and therefore, the Court is limited to the allegations in the complaint in evaluating whether Plaintiff will be able to establish a violation of § 1981. The complaint alleges that the Contract was between Johnson Enterprises, as a "dba," and UC. Therefore, the Court does not find that Plaintiff is barred from asserting a § 1981 claim, based strictly on the pleadings. Rather, this question is more appropriately decided at summary judgment upon a fully developed factual record.

10

Accordingly, the Motion is GRANTED as to the § 1983 claim and Plaintiff is granted leave to amend the complaint to assert a claim under 42 U.S.C. § 1981.

### C.   Claim 3

Defendants assert that Plaintiff's breach of the implied covenant of good faith and fair dealing claim should be dismissed because it duplicates Plaintiff's breach of contract claim. The Court concludes that it is premature to make this determination and therefore denies Defendants' request without prejudice to renewing it on summary judgment.

"Every contract imposes on each party a duty of good faith and fair dealing in each performance and in its enforcement." *Diaz v. Federal Express Corp.*, 373 F. Supp. 2d 1034, 1066 (C.D. Cal. 2005) (citations omitted). Courts have held that "[i]f the allegations in a claim for breach of the implied covenant of good faith and fair dealing 'do not go beyond the statement of a mere contract breach, and relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.'" *Id.* (quoting *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1393 (2nd Dist. 1990)). However, this Court's review of the case law in the Ninth Circuit indicates that this issue is generally addressed at the summary judgment stage of the case rather than on a 12(b)(6) motion. *See, e.g., Diaz*, 373 F. Supp. 2d at 1066 (dismissing claim for breach of covenant of good faith and fair dealing as duplicative of breach of contract claim on summary judgment). Therefore, the Court denies Defendants' request to strike this claim without prejudice to renewing the request at a later stage of the case, after some discovery has occurred.

## IV.   CONCLUSION

Defendants' Motion is GRANTED in part and DENIED in part as stated below.

The Motion is GRANTED as to: 1) Plaintiff's claim under 42 U.S.C. § 1983, which is dismissed, in its entirety, pursuant to the stipulation of the parties; 2) Plaintiff's claim for specific performance (Claim Four), which is dismissed pursuant to the stipulation of the parties; and 3) Plaintiff's requests for statutory, treble and punitive damages, which are stricken as to all claims,

11

pursuant to the stipulation of the parties. The Motion is DENIED without prejudice as to Claim Three, for breach of the implied covenant of good faith and fair dealing.  Defendants may renew their request for dismissal of that claim at the summary judgment stage of the case.  Finally, Plaintiff's request for leave to amend to assert a claim under 42 U.S.C. § 1981 is GRANTED. Plaintiff shall file an amended complaint that conforms to this Order within fourteen days.

IT IS SO ORDERED.

Dated:  June 28, 2010

_____
JOSEPH C. SPERO
United States Magistrate Judge